IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DWIGHT BYRD, #1567630, | * | |
| aka CHARLES REED | | |
|     Plaintiff, | * | |
| | | |
|     v. | * | CIVIL ACTION NO. CCB-08-2368 |
| | | |
| MICHAEL STOUFER, et al., | * | |
| | | |
|     Defendants. | * | |

********

**MEMORANDUM**

On September 9, 2008, pro se plaintiff Dwight Byrd, aka Charles Reed, an inmate currently incarcerated in Huntsville, Texas, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 seeking injunctive relief and money damages. Plaintiff alleges that, while he was incarcerated at the North Branch Correctional Institution (NBCI) in Cumberland, Maryland, prison officials subjected him to excessive force, including the use of a taser shield and a "leash," which was used to pull Byrd by his handcuffs against his cell door. Byrd further states that he was denied medical care, meals, hygiene items, clothes, and showers for several days. He also states that, when he was placed in the isolation cell on August 27, 2008, the water to the cell was turned off, the window to the cell was "jammed shut," a bucket of water was poured underneath the door, and a blanket was stuffed at the bottom of the door to block air flow into the cell. Paper No. 1 at 5.

Defendants have filed a motion for summary judgment substantively addressing Byrd's complaints. Paper No. 13. Byrd has filed an opposition. Paper Nos. 15-16. No hearing is necessary. Local Rule 105.6 (D. Md. 2008). For the reasons stated below, the dispositive

motion filed by defendants, treated as a motion for summary judgment, will be denied.

## Background

Byrd alleges that, on August 28, 2008, he was extracted from his cell after it was learned that he had a handcuff key.[1] After he was extracted and subdued, by means of both pepper spray and a stun shield (Paper No. 13 at 3; *see* Paper No. 1 at 5 (describing being extracted by officers using "riot gear")), he alleges he was assaulted by correctional officers. He claims that he was provided an insufficient amount of time to wash the pepper spray from his eyes and body and, upon exiting the shower and submitting to handcuffing, he was again assaulted by correctional officers and escorted to an isolation cell where he claims defendants attached a leash to his handcuffs. The leash was threaded through the slot in the door and officers pulled Byrd against the door causing further injury. Byrd also alleges that his isolation cell did not have water, its ventilation system was blocked, and he was not provided hygiene items. He further states he was deprived of meals for several days and also denied access to psychiatric and medical care. Paper No. 1.

## Analysis

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified

---

[1] Plaintiff does not dispute that he possessed a handcuff key. (*See* Paper No. 15 at 2.)

this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In the instant case, it is plaintiff's responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.[2]

---

[2] A claim of excessive force involves both objective and subjective elements. *See Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998). The subjective element is analyzed to determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The objective element is met if the officers' actions were harmful enough to offend contemporary standards of decency. *Id.* at 8. In making these determinations, a court must look at the need for the application of force, the relationship between the need and the amount of force applied, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U.S. 312, 321 (1986).

This he has done.  There are genuine disputes of material fact concerning the events following the initial cell extraction that occurred on August 27, 2008, including: questions regarding the type of force applied while escorting plaintiff to the medical department, the showers, and his isolation cell; the need for such force; and whether the injuries incurred as a result were *de minimis*.[3]  There are additional genuine disputes of material fact concerning Byrd's confinement in isolation from August 27, 2008 to September 2, 2008, including: the number of meals provided to Byrd; the conditions of his cell; and what if any access he was provided to basic hygiene facilities and medical care.[4]  Further, if the force and conditions of confinement were applied in the manner alleged by Byrd, qualified immunity would not apply.[5]  For the foregoing

---

> Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.
>
> > In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of a basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind.

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; internal quotations, alterations, and citations omitted).  Thus, in an Eighth Amendment claim based upon prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (quotations omitted).  Specifically, prison officials must consciously disregard a substantial risk of serious harm to an inmate's health or safety.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

[3] Plaintiff does not argue that the initial cell extraction was improper.  He admits that he showed correctional officers that he possessed a handcuff key and thereafter refused to submit to a cell search.  Clearly, under these circumstances,  correctional officers were justified in forcibly removing plaintiff from his cell.  What remains disputed are the events that followed.  Plaintiff claims, by affidavit, that after he was subdued, cooperative, and restrained, correctional employees twice assaulted him.

[4] While defendants have provided to the court the use of  force reports and tier logs concerning plaintiff's cell extraction and housing in isolation, they have failed to provide any declarations or affidavits as to these events.  The documents provided by defendants are unverified reports disputed by plaintiff and inmate witnesses.

[5] The parties have advised the court that the cell extraction and certain events following the extraction were

reasons, summary judgment cannot be granted at this time, and counsel shall be appointed for the plaintiff.

During the pendency of this action, Byrd was transferred from NBCI.  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief.  *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987)*; see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not "in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury") (internal quotation and citation omitted).  As it is clear from the pleadings and records before the court that Byrd is no longer housed at NBCI, his request for injunctive relief has been rendered moot.  Consequently, his request for injunctive relief shall be denied.

A separate Order follows.


August 24, 2009                                                    ____/s/_____
Date                                                                         Catherine C. Blake
                                                                                United States District Judge

---

videotaped.  The tape has not been provided to the court.  If the tape of the August 27, 2008 events still exists, counsel for defendants shall secure it and provide a copy to the court.